IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TOMMIE LEE DOCKERY                                                                      PLAINTIFF

VS.                                                   CIVIL ACTION NO. 3:15-CV-139-MPM-JMV

TUNICA COUNTY, MISSISSIPPI                                                        DEFENDANT

**ORDER**

This cause comes before the court on the motion of defendant Tunica County, Mississippi for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Tommie Lee Dockery has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is an Age Discrimination in Employment Act (ADEA) case in which plaintiff alleges that he was constructively forced to retire from his position as a member of the Tunica County road department after working there for twenty years. Plaintiff, who was sixty-eight years old at the time of his retirement, alleges that he only elected to do so after his supervisor, Joe Hawkins, repeatedly made it clear that the older road department workers should consider retiring, lest a budgetary crisis affecting the county force him to make layoffs. Plaintiff alleges that this generalized pressure to retire became specifically directed towards him during a March 7, 2014 meeting at which Hawkins informed him that his longtime partner Bobbie Watson was retiring and inquired regarding what he planned to do.

Plaintiff argues that, while he did respond that he intended to retire as well, he and his daughter both subsequently made it clear to county employees that they felt he was being forced

1

out.  Defendant emphasizes, however, that county employees repeatedly told plaintiff that he did not have to retire and that his choice to do so was his alone.  The parties agree that plaintiff did, in fact, retire on March 31, 2014, but, soon thereafter, he filed a charge of age discrimination with the EEOC.  Plaintiff subsequently filed the instant ADEA lawsuit, and defendant presently seeks summary judgment, arguing that no genuine issue of fact exists regarding plaintiff's ability to recover in this case and that it is entitled to judgment as a matter of law.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making its ruling, this court is required to construe "all facts and inferences in the light most favorable to the nonmoving party."  *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  However, a party cannot defeat summary judgment with "conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence."  *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014).

To establish an ADEA claim, the plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of his termination.  *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir. 2010).  Since there is no direct evidence of age discrimination in this case, this court is required to analyze it under the familiar *McDonnell Douglas* burden-shifting framework.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).  Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of age discrimination.  *Squyres v. Heico Cos.*, 782 F.3d 224, 231 (5th Cir. 2015).  In order to establish a *prima facie*

case, the plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of his discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). If the plaintiff is able to prove his *prima facie* case, the burden of production then shifts to Tunica County to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Id.* If Tunica County meets this burden, the burden then shifts back to the plaintiff to "rebut the employer's purported explanation to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922.

While there are thus a number of elements to an age discrimination claim, this case is somewhat unusual in that defendant's summary judgment arguments focus almost exclusively upon the issue of whether plaintiff can demonstrate that he was discharged in this case.[1] Plaintiff acknowledges that he retired from the road department, and, as discussed below, this makes it incumbent upon him to demonstrate that he was constructively discharged. A constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign. *Brown v. Bunge Corp.*, 207 F.3d 776, 781-82 (5th Cir. 2000). In the Fifth Circuit, federal courts consider a number of factors when deciding whether an employee's working conditions were so intolerable that a reasonable person would

---

[1]This court notes that, although it provides no actual arguments on this issue, defendant asserts in a footnote that plaintiff's *prima facie* case of discrimination fails because "[a]s a practical matter, the plaintiff also cannot show that he was replaced by someone younger or outside the protected class." [Defendant's brief at 5, footnote 1]. It seems clear to this court, however, that if an employer conducts layoffs or forces retirements on the basis of age, then this is actionable under the ADEA, even if the employee is not replaced by someone younger.

3

have felt compelled to resign. These factors, which the Fifth Circuit has emphasized apply "singly or in combination," include: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger person; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Brown*, 207 F.3d at 782.[2]

In this vein, defendant argues in its brief that:

> The Plaintiff's subjective belief that Hawkins "did not like old people" or was trying to force him to retire is not evidence of age discrimination. He was told time and time again that he did not have to retire. In fact, the Plaintiff even admitted in his deposition that Hawkins never told him that he had to retire. There is no evidence is this case that Hawkins ever mistreated the Plaintiff or tried to coerce him to retire. Again, it is undisputed that the Plaintiff was well liked in the Road Department and was a good worker. An individual simply cannot voluntarily retire and then turn around and sue his employer for age discrimination. As such, Tunica County is entitled to a judgment as a matter of law.

[Defendant's brief at 4-5].

This court acknowledges that defendant has quite substantial summary judgment arguments in this case, and it certainly does not regard plaintiff's age discrimination claim as a strong one. Nevertheless, this court believes that plaintiff has rather narrowly succeeded in establishing triable fact issues regarding whether Hawkins exerted a sufficient amount of pressure for him to retire so as to make it appropriate for a jury to decide the issue of constructive discharge. In so concluding, this court frankly considers it more likely than not that

---

[2]This court takes the Fifth Circuit's reference to "singly or in combination" as suggesting that harassment alone, if sufficiently severe, might give rise to a finding of constructive termination, in a particular case. This certainly seems accurate to this court.

a jury will ultimately conclude that plaintiff's proof falls short on this issue. At the same time, this court believes that it would be better for a jury to decide this issue, partly because the approach taken by Hawkins in this case does appear to raise significant concerns under the ADEA. In cases where this court is confronted with troubling employment practices, it is more inclined to conclude that a jury should resolve any ambiguities regarding the *effect* which those practices may have had, than in cases where no such concerning practices are present.

This court believes that defendant's own briefing, and the testimony of its employees, raise serious concerns regarding the approach taken by Hawkins in this case. For example, defendant writes in its reply brief that:

> The only "evidence" the Plaintiff has in this case relates solely to his subjective belief that Hawkins wanted him to retire. For example, the Plaintiff believes that Hawkins wanted him to retire because retirement options were discussed at certain staff meetings. While it is true that Hawkins discussed retirement options with the road crew employees, Hawkins did not hold weekly meetings for the sole purpose of encouraging older workers to retire. He simply told his employees that Tunica County was in a financial crisis and those who were eligible to retire should think about retiring because it might prevent him from having to make layoffs.

[Reply brief at 3].

Regardless of whether encouraging older workers to retire was the "sole" purpose of the meetings held by Hawkins, this court believes that raising the specter that a particular employee's failure to retire might effectively make him responsible for layoffs suffered by himself or his co-worker(s) constitutes a quite significant degree of mental coercion to retire. This is particularly true if this pressure is exerted on a repeated and sustained basis, as appears to be the case here. Inevitably, any pressure placed upon employees to retire will be felt to a much greater extent by older workers than young ones, and the evidence in this case appears to suggest

5

that this is true here. Indeed, plaintiff argues in his brief, without contravention from defendant, that:

> Dockery believed that Hawkins wanted to get rid of the older employees in the road department. After Hawkins took over the road department,[3] the five oldest members of the road department, all over sixty-five (65), retired: 1) Tommie Dockery; 2) Bobby Watson; 3) Willie Taylor; 4) Walter Taylor; and 5) MacArthur Gilbert. After these gentlemen retired, there were no employees on the road crew over sixty-four (64) years old.

[Plaintiffs' brief at 2-3].

It thus appears that, perhaps unsurprisingly, the tenure of a manager who repeatedly offered encouragement for workers to retire saw the five oldest members of the road department choosing to do so in rather short order. In the court's view, this raises troubling issues under the ADEA. Of course, sixty-five is a quite normal age for an individual to retire, and the retirements of the road department members in this case are thus not necessarily evidence of discrimination. At the same time, this court regards the basic nature of Hawkins' appeal to his employees to be troubling, and the effect which this appeal may have had merely strengthens its concerns in this regard. In addition, the Fifth Circuit concluded in a recent decision that evidence that an older worker was encouraged to retire may give rise to triable jury issues of age discrimination, *see Fitzpatrick v. Pontotoc Cty., Miss.*, 612 Fed.Appx. 770, 775-76 (5th Cir. 2015), and, as discussed below, this is a contributing factor to this court's inclination to allow a jury to decide these matters.

Aside from Hawkins' admitted appeals for employees to consider retiring in order to avoid layoffs, he also appeared, in a March 7, 2014 meeting with plaintiff, to exert some degree

---

[3]Hawkins took over management of the road department in 2012.

of pressure upon plaintiff individually to retire. The record contains multiple (largely consistent) descriptions of this meeting by various county employees, but this court will quote from the one provided by Miriam Tyler, a secretary with the county maintenance department. In her deposition, Tyler described the March 7 meeting as follows:

> Q: [M]y understanding is that you were present for a meeting on March 7, 2014, where Mr. Dockery was called into a meeting with Mr. Hawkins about retirement. Tell me what you recall about that meeting.
> A: He called Delilah Vaughn and myself and Tommie Dockery in the office and told Tommie that Bobbie Watson was retiring and asked him what he planned to do. And Tommie told him - sat there a few minutes and looked at him and he said, well, I'll retire too. And then Mr. Hawkins told him to wait, go home, talk to his family over the weekend, because this was on a Thursday, and told him to go home and talk to his family on the weekend, his daughters, and then give him an answer Monday. That he didn't want him to retire, he was just letting him know what Bobby was doing.

[Tyler depo. at 6].

In her testimony, Tyler also confirmed what she told the EEOC about Hawkins' statements that day, namely that:

> A: He was sitting at a chair and he was looking down at the floor while Mr. Hawkins was talking to him. And he said, "Well, I'll just retire too." And that's when Mr. Hawkins told him to go home and talk to his daughters over the weekend and let him know something Monday.

[Tyler depo. at 8]. Thus, Tyler indicated that plaintiff was "looking at the floor" during his meeting with Hawkins, and, plaintiff may well seek to argue before a jury that this indicates that he felt himself under some degree of coercion at the time.

In its briefing, the county emphasizes Hawkins' statement at the March 7 meeting (and subsequently) that plaintiff did not have to retire. In the court's view, however, this statement must be considered in conjunction with the fact that, as defendant concedes, Hawkins repeatedly encouraged older workers to consider their retirement options. Thus, there was a very

7

reasonable basis for plaintiff to have believed that Hawkins wanted him to retire. Moreover, when that same manager called plaintiff in for a meeting to tell him specifically that his long-time work partner Bobbie Watson was retiring and to ask what he planned to do, it seems quite reasonable for plaintiff to have believed that the desired response was that he was also retiring.

There is very substantial evidence in the record confirming that, at the time he retired, plaintiff did, in fact, believe that he was being forced out. Indeed, Tyler testified that, the day after plaintiff told Hawkins he would retire, his daughter Lenore Pride angrily called the road department to ask why he was being forced to retire. Thus, after discussing the matter with him, plaintiff's daughter clearly did not believe that his decision to retire was voluntary. In her deposition, Pride confirmed that her father believed that "pressure and stress was being placed on him and ... Mr. Watson, because they were older people, older employees."[4] [Pride deposition at 11]. In her deposition, Pride also testified that her father told her months before the meeting with Hawkins that he felt he was being forced to retire and that the March 7 meeting merely strengthened these feelings. [Pride deposition at 14]. Pride also testified that, after the meeting, plaintiff decided not to return to work because he believed that, if he did so, "Mr. Hawkins would fire him, or he would not be treated fairly, so he didn't feel comfortable with staying." [Id. at 14]. The utility of plaintiff's own deposition testimony is considerably reduced by the fact that, by his own admission, his memory is failing.[5] Nevertheless, plaintiff did make clear his

---

[4]This court is not considering this and other similar testimony by Pride as evidence that plaintiff and the older workers were actually being forced to retire, but merely as evidence of his state of mind during this time period.

[5]Defendant has not sought to argue that these memory troubles render plaintiff unqualified for his position with the road department.

belief that he and Bobby Watson "couldn't satisfy Joe" Hawkins because he "don't like old men." [Plaintiff's deposition at 26]. Plaintiff's state of mind around the time of his retirement is further confirmed by the deposition testimony of Tunica County payroll manager Linda Turley, who testified regarding a conversation she had with him on March 25, 2014, as she was processing his retirement application. Turley testified that, when she asked plaintiff whether he was ready to retire, he shook his head to respond negatively:

> A: He was saying he wasn't ready.
> Q: So when you're saying that when he said that he was shaking his head?
> A: That's right.
> Q: As in left and right like no
> A: As in indicating no.

[Turley deposition at 7].

In light of the foregoing, this court believes that plaintiff has a potentially strong argument that a significant amount of pressure was exerted upon him to retire in this case, and there is considerable evidence confirming that he perceived this to be the case. Having said that, this court also believes that defendant has a quite reasonable argument that any pressure Hawkins might have applied upon older workers to retire was simply not strong enough to support recovery under the Fifth Circuit's rather stringent constructive discharge authority. In particular, this court agrees with defendant that the fact that various county employees repeatedly made clear to plaintiff that he did not have to retire may make establishing constructive discharge in this case an uphill battle for him. The record indicates that, among others, Hawkins repeatedly told plaintiff he did not have to retire, and Turley testified in her deposition that she gave plaintiff similar assurances. In light of this proof, defendant has a very reasonable argument that, if a particular employee chooses to retire, then it is not in a position to prevent

him from doing so and that all it can do is assure him that he is not required to do so.

While this court thus recognizes the force of defendant's arguments on this issue, it has concerns that, taken to their logical conclusion, they might serve to legitimize a strategy whereby a supervisor who did not like older (or black or female) workers might decide, on a systematic basis, to gently, yet repeatedly, make clear to workers in those groups that their presence was not appreciated and that they would be better off either retiring or working somewhere else. This court believes that such a practice would raise legitimate concerns under federal anti-discrimination laws, even assuming that the supervisor in question "backs off" and makes clear to the worker that he does not have to leave in cases (as here) where there is "pushback" from the employee. This court's concerns in this regard are heightened by the fact that, as discussed previously, Hawkins' encouragement for older workers to consider retiring may have borne considerable fruit, in the form of the retirements of the five oldest members of the road department.

In its reply brief, defendant argues that "all the cases from the Fifth Circuit that found sufficient circumstantial evidence of constructive discharge in an ADEA case involve situations where a supervisor threatened an employee with an adverse employment action if he or she did not retire." *See e.g. Tyler v. Union Oil Co.*, 304 F. 3d 379 (5th Cir. 2002) (employee told to accept transfer or retire). Even assuming that this is true, this court does not believe that this fact necessarily precludes plaintiff from prevailing in this case. While this court agrees with defendant that there is no evidence that plaintiff was directly told he would be fired if he did not retire, Hawkins made it clear to plaintiff and the other workers that, if at least some of them did not choose to retire, then layoffs would have to be made.

10

Thus, this court believes that this is a case where the plaintiff can reasonably argue before a jury that defendant did, in fact, raise the threat of an adverse employment action in encouraging employees to consider their retirement options. While this threat was not directed specifically at plaintiff or any other employee, there was (as far is this court is aware) no assurance given to plaintiff that he would be immune from any such layoffs. Moreover, even assuming that other road crew workers would be more likely to lose their jobs than plaintiff, this court believes that any decent person would be greatly concerned by the notion that his choosing not to retire might result in a co-worker losing his job.

In spite of the repeated assurances of county employees to plaintiff that he did not have to retire, defendant cites no evidence that this threat of layoffs was ever rescinded. Accordingly, this court does not regard verbal assurances that plaintiff did not have to retire as necessarily removing the pressure exerted upon him to do so, since the underlying threat of layoffs remained active. Indeed, as noted previously, Pride specifically testified that her father was afraid that, if he did return to work, he would be fired. While the court thus does not regard the Fifth Circuit's constructive discharge authority as necessarily being fatal to plaintiff's case, it does believe that, at this juncture, the evidence on this issue seems more favorable to defendant. That does not necessarily mean, however, that no triable jury issues exist in this regard, since courts routinely allow issues to be decided by juries even though the facts on summary judgment appear more favorable to the defendant. This is entirely appropriate considering that, at the summary judgment stage, all reasonable factual inferences are to be granted to the plaintiff.

This court's inclination to allow a jury to decide the issues in this case is also strengthened by guidance provided to it by the Fifth Circuit in a recent decision. In *Fitzpatrick*,

the Fifth Circuit concluded that this court should have allowed a jury to resolve what it found to be disputed fact issues in another ADEA case. In reaching this conclusion, the Fifth Circuit acknowledged that "[t]he evidence in this case is undoubtedly thin on both sides," but it held that, given the deferential (to the plaintiff) summary judgment standard, this court should have allowed a jury to decide the issue. *Fitzpatrick*, 612 Fed.Appx. at 776.

*Fitzpatrick* was, factually speaking, quite different from this case, but one important similarity is that, in each case, the plaintiffs relied upon proof that the defendants had encouraged them to consider their retirement options. The fact that the Fifth Circuit regarded this evidence as potentially strong evidence of age discrimination strikes this court as significant for the purposes of this case. The defendants in *Fitzpatrick* and this case each argued that, in encouraging the older employees to consider retiring, they were attempting to provide them with an easier and more amicable way of leaving their jobs, short of a potential adverse employment action. However, the Fifth Circuit in *Fitzpatrick* concluded that this is an argument that should be made to a jury, since age discrimination is another potential reason for encouraging older employees to retire. This conclusion also seems applicable here.

This court notes that the plaintiffs' proof in *Fitzpatrick* and in this case each had strengths and weaknesses which the other cases did not have. In *Fitzpatrick*, there was an unambiguously adverse employment action, since, in that case, the newly-elected Pontotoc County chancery clerk, citing loyalty concerns, fired all five of the deputy clerks he had inherited from the previous clerk. Thus, the plaintiffs in *Fitzpatrick* did not face the central obstacle confronting plaintiff in this case, namely the fact that he chose to retire and was not fired. While this is obviously significant, this court believes that the proof of discriminatory

12

intent is considerably stronger in this case than in *Fitzpatrick*.

In *Fitzpatrick*, this court believed there to be a number of weaknesses in the plaintiffs' proof of discriminatory intent, none of which are applicable to the plaintiff in this case. For example, this court found there to be quite significant evidence in support of the clerk's argument that he had reasonable concerns about the loyalty of the staff he inherited from a political opponent. Most importantly, this court noted that the oldest plaintiff had admitted in her deposition that she had "told individuals in the community about her belief that [the clerk] was 'incompetent' and not well suited for the job of Chancery Clerk." *Fitzpatrick v. Pontotoc*, 2014 WL 11290901 *6 (N.D. Miss. 2014). This court also noted that not all of the deputy clerks who were fired had even reached the age of forty, and it emphasized that they had only aged eight months from the time the clerk took office until he decided to fire them. In this vein, this court wrote that the notion that the clerk "would have decided a mere eight months later to fire his entire deputy clerk staff based upon sudden concerns about their age does not strike this court as being particularly plausible." *Fitzpatrick*, 2014 WL 11290901 at *3. These facts, along with testimony that the clerk had expressed a great amount of emotional anguish to confidants about his loyalty concerns with his staff, *id.* at 4, led this court to believe that the evidence strongly suggested that these concerns, rather than age discrimination, were the genuine reasons for the terminations in that case.

In this case, by contrast, defendant admits that plaintiff's work was satisfactory, and there is no evidence of any personality conflicts or loyalty concerns which would have led Hawkins to seek to force him out. Moreover, unlike the plaintiffs in *Fitzpatrick*, the plaintiff in this case had worked for the road department for twenty years, and this court believes this to be a period of

13

time which lends itself to a more credible argument that concerns about plaintiffs' advancing age might have motivated a desire to encourage him to retire. Also, once again, plaintiff has presented uncontradicted proof that the five individuals who retired from the road department during Hawkins' tenure were the five oldest members, each of whom were over sixty-five. This court believes that this age range presents a much stronger suggestion of potential age discrimination than was the case in *Fitzpatrick*, where only one of the plaintiffs had reached the age of sixty.

*Fitzpatrick* aside, this court has concerns that, if it were to simply dismiss plaintiff's claim on summary judgment, then this might serve to create a quite effective road map for employers to "weed out" older workers. While this court recognizes the challenges plaintiff faces in proving constructive discharge, it has serious concerns about the sheer *effectiveness* of the approach utilized by the defendant in this case in encouraging older workers to retire. In so stating, the court acknowledges that, as far as it is aware, Hawkins may have been entirely truthful in stating that, in light of Tunica County's financial crisis, he was simply seeking the least painful manner in which to trim the ranks of the road department and thereby avoid layoffs. By the same token, however, this court believes that the very same strategy of encouraging workers to retire might be used to great effect by a manager who simply believes that older workers are less effective and should be encouraged to leave. This court is therefore quite reluctant to, in effect, place its judicial seal of approval on the approach utilized by defendant in this case by precluding a jury from even considering plaintiff's claims. While acknowledging the force of defendant's constructive discharge arguments, this court nevertheless concludes that the motion for summary judgment is due to be denied.

14

In light of the foregoing, it is ordered that the motion for summary judgment is denied.

So ordered, this the 1st day of December, 2016.

                                                **/s/ MICHAEL P. MILLS**
                                                **UNITED STATES DISTRICT JUDGE**
                                                **NORTHERN DISTRICT OF MISSISSIPPI**